UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DSI ASSIGNMENTS, LLC, SOLELY AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF PEARL AUTOMATION INC. | CASE NO. |
| Plaintiff, | |
| v. | |
| AMERICAN ROAD PRODUCTS, INC.; INSTALLERNET, INC.; ANTHONY FRANGIOSA; STEPHEN WITT; Does 1-50, | |
| Defendants. | |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

1.     DSI ASSIGNMENTS, LLC, a Delaware limited liability company, solely as Assignee for the benefit of Creditors of Pearl Automation Inc., hereby asserts this Complaint against defendants American Road Products, Inc., InstallerNet, Inc., Stephen Witt, Anthony Frangiosa, collectively "Defendants", and allege as follows:

### **THE PARTIES**

2.     Plaintiff DSI Assignments, LLC ("DSI") is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Chicago, Cook County, in the State of Illinois.  At all times herein, DSI acts solely in its capacity as Assignee for the benefit of the Creditors of Pearl Automation Inc. ("Plaintiff's Assignor" or "Pearl"), a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Scotts Valley, Santa Cruz County, in the State of

California.  On or about July 7, 2017, Pearl made, and DSI accepted, a General Assignment of Pearl's assets, including but not limited to all patents, copyrights, trademarks and trade names, URL's, or related website rights, social media platforms, general intangibles, causes and choses in action (the "Assignment").  As Assignee for the Benefit of the Pearl creditors, DSI owns, manages and has exclusive right, title, interest and authority to sell, license, operate, exploit and liquidate Pearl's assets and intellectual property, including trademarks, logos and patent rights owned by it, and to distribute the proceeds in accord with the terms of the General Assignment and controlling law. A true and correct copy of the General Assignment is attached to the Complaint as **Exhibit A.**

3.      Defendant American Road Products, Inc. ("American Road Products") is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 85 Flagship Drive, Suite F, North Andover, Essex County, Massachusetts.

4.      Defendant InstallerNet, Inc., ("InstallerNet") is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 85 Flagship Drive, Suite F, North Andover, Essex County, Massachusetts.

5.      Defendant Anthony Frangiosa ("Frangiosa") is an individual, who, on information and belief, resides at 28B Depot Road, Boxford, MA 01921-2310, Essex County, Massachusetts, and is a shareholder, officer, and director of American Road Products.

6.      Frangiosa is listed as the sole officer and director of American Road Products, and is the Registered Agent in the Commonwealth of Massachusetts as of the date of July 17, 2017, with a business address at 85 Flagship Drive, Suite F, North Andover, Essex County, Massachusetts.

7.     Defendant Frangiosa also is a shareholder, officer, and director of InstallerNet.  Frangiosa is listed as President and director of InstallerNet and is the Registered Agent for American Road Products in Massachusetts, as stated in the *Application for Reinstatement of Authority to Transact Business* filed with the Secretary of the Commonwealth of Massachusetts on August 7, 2017.

8.     Defendant Stephen Witt ("Witt") is an individual, who, at all times relevant herein has resided at 5781 Rogers Drive, Huntington Beach, Orange County, California,92649-4563, and who, at all times relevant herein to the allegations herein, was a shareholder, officer and director of American Road Products.   Witt is listed as the President and Registered Agent for American Road Products in California as of the date of this filing, and at all times relevant to the allegations herein.

9.     Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1-50, inclusive, whether individual, corporate, associate or otherwise, and therefore sues these defendants by fictitious names. Plaintiff will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiff as herein alleged, and is thus liable for the damages suffered by Plaintiff.

10.    In committing the misconduct alleged herein, defendants, and each of them, were an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent,

representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

11.     Wherever appearing in this Complaint, each and every reference to defendants or to any of them is intended to be and shall be a reference to all defendants, unless said reference is otherwise specifically qualified.

12.     Plaintiff is informed and believes and thereon alleges that there exists, and at all times herein mentioned existed, a unity of interest between the Defendants, and each of them, such that any individuality and separateness between them has ceased, and each is the alter ego of the other as follows:

    a.     Plaintiff alleges on information and belief that defendants American Road Products is, and at all times was, a mere shell and sham without capital, assets, stock or stockholders. Said corporate defendant American Road Products was conceived, intended, and used by defendant InstallerNet and defendant Frangiosa as a device to avoid liability and for the purpose of substituting a financially insolvent corporation in the place of defendants InstallerNet, Frangiosa, and Witt.

    b.     Plaintiff alleges on information and belief that defendant American Road Products is, and at all times was, so inadequately capitalized that, compared with the business to be done by American Road Products, and the risks of loss attendant thereto, its capitalization was trifling or illusory.

    c.     Plaintiff alleges on information and belief that defendant American Road Products is, and at all times was, the alter ego of defendant InstallerNet, Frangiosa and Witt, and there exists a unity of ownership between defendants such that any separateness has ceased to exist in that InstallerNet and Frangiosa used assets of defendant American Road Products for their personal use.

d.      Plaintiff alleges on information and belief that corporate defendant American Road Products is, and at all times had mentioned was, a mere shell, instrumentality and conduit through which defendant InstallerNet and defendant Frangiosa carried on their business in the name of defendant American Road Products exactly as they conducted it previous to incorporation, exercising complete control and dominance of such business to such an extent that any  individuality or separateness of defendant American Road Products, and defendant InstallerNet, Frangiosa and Witt, does not now, nor at any time herein mentioned, exist.

e.      Plaintiff alleges on information and belief that defendant American Road Products is, and at all times here and mentioned was, controlled, dominated, and operated by defendant InstallerNet and defendant Frangiosa as their individual business and alter ego, in that the activities and business of defendant American Road Products were carried out without the holding of directors or shareholders meetings, no records of minutes of any corporate proceedings were maintained and defendant InstallerNet and defendant Frangiosa entered into transactions with defendant American Road Products without the approval of other directors or shareholders.

f.      Plaintiff alleges on information and belief that adherence to the fiction of separate existence of defendant American Road Products as an entity distinct from defendants InstallerNet, Frangiosa and Witt would permit abuse of the corporate privilege and would sanction fraud in that defendant InstallerNet and defendant Frangiosa substituted defendant American Road Products as Purchaser and Licensee in place and stead of defendant InstallerNet to Plaintiff's Assignor for the purpose of avoiding and preventing attachment and execution by creditors including plaintiff.

g.     Plaintiff alleges that adherence to the fiction of separate existence of defendant American Road Products as an entity distinct from defendant InstallerNet and defendants Frangiosa and Witt would permit abuse of the corporate privilege and produce an inequitable result in that defendant Frangiosa represented to Plaintiff's Assignor that defendant InstallerNet and defendant American Road Products were "the same company or one the parent company of the other", and that InstallerNet would be responsible for corporate obligations of defendant American Road Products as, and the transaction complained of herein was entered into under the belief that defendant InstallerNet and defendant Frangiosa were in reality the two parties obligated.

h.     Plaintiff alleges that adherence to the fiction of separate existence of defendant American Road Products as an entity distinct from defendant InstallerNet, Frangiosa and Witt would permit abuse of the corporate privilege and produce an inequitable result in that defendant InstallerNet and defendant Frangiosa represented that there was a unity of common ownership, management, and location between defendant InstallerNet and defendant American Road Products and Witt, with defendant Frangiosa in management and control of both, and that they were "the same company and not to worry about it", resulting in Plaintiff's Assignor entering into contract with American Road Products, all to Plaintiff's loss as herein pleaded.

i.     Plaintiff alleges that adherence to the fiction of separate existence of defendant InstallerNet as an entity distinct from defendants American Road Products, Frangiosa and Witt would permit abuse of the corporate privilege and produce an equitable result in that defendant InstallerNet and defendant Frangiosa represented that there was a unity of common ownership, management, location between defendant InstallerNet and defendant American Road Products, with defendant Frangiosa in management and control of both,

and that they were "the same company and not to worry about it", and that Frangiosa had acquired American Road Products and owned both InstallerNet and American Road Products, and that entering into contract with one was the same as entering into contract with the other, resulting in Plaintiff's Assignor entering into contract with American Road products to Plaintiff's loss as herein pleaded.

## JURISDICTION AND VENUE

13.    This action is brought under the Federal Trademark Act (the "Lanham Act") of July 5, 1946, as amended, 15 U.S.C. Section 1051 et seq.  This Court has jurisdiction under 15 U.S.C. Section 1121 and 28 U.S.C. Section 1331 and 1338. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367, over the subject matter of the state law claims because those claims are so related to DSI's federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

14.    Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. Section 1391(b)(2) because defendants InstallerNet and defendant American Road Products are both foreign corporations registered in Delaware, each with a principal place of business at 85 N. Flagship DR, Suite F, N. Andover, Essex County Massachusetts; and, that Tony Frangiosa is the Registered agent for service of both InstallerNet and American Road Products in Massachusetts.

15.    Defendants InstallerNet and American Road Products, (through their mutual President, CEO and Chairman, defendant Frangiosa), had meetings with many officers, directors and employees of Plaintiff's Assignor in Scotts Valley, Santa Cruz County, California, as relates to the specific matters and controversies at issue herein.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

16.     Plaintiff's Assignor was a technology company that designed, engineered, manufactured, marketed and sold consumer products to advance key driver assistance technology to be sold in the automotive aftermarket, including a rear view camera imbedded in a license plate frame, with a related phone application and phone mount for viewing.  The company secured patent rights, and trademarks, foreign and domestic, on its inventions that are related to the subject action, which are collectively known as "RearVision".

17.     Plaintiff's Assignor has used the Pearl patent rights, trademarks, and variants of those marks, in interstate commerce and in international commerce in connection with Pearl RearVision, including the design and engineering, manufacture, marketing and sale of RearVision.

18.     As Assignee for the benefit of the Pearl creditors, Plaintiff is the owner of numerous trademark registrations consisting of or featuring the name PEARL, and logo, including:

    a.     Vehicle Safety Equipment, U.S. Reg. No. 5162753

    b.     Back up Warning alarms, Reg. No. 5162754

    c.     Vehicle Safety Equipment, U.S. Reg. 5206158

    d.     Back up Warning alarms, U.S. Reg. 5097411

    e.     Processing of Video Data, U.S. Reg. 5206133

19.     The foregoing registrations cover goods in no less than 3 International classes, for products as diverse as vehicle safety equipment, back-up sensors and cameras, security services, alarms, road and traffic information, license plate holders and vehicle camera mounts, video processing, emergency roadside services, mapping and diagnostic services.  Pearl has also used PEARL and many of the foregoing registered marks, and unregistered variants, for goods and services uncovered by the registrations (collectively, the "PEARL Marks").

20.     As Assignee, DSI is the owner and licensor of the PEARL trademarks, logos, and intellectual property ("IP"). In that capacity, DSI manages and has exclusive authority to license, exploit, and sell all of the PEARL Marks and IP.

21.     Plaintiffs' Assignor, and defendants InstallerNet and Frangiosa had developed a professional relationship, meeting regularly in 2016 and the first half of 2017, regarding development of programs and initiatives to promote the sale of PEARL products.  Many of the PEARL people had gotten to know many of the InstallerNet people, and had confidence in their ability to pay for the Inventory. To wit, PEARL representatives including VP, Finance Karen Carte, VP, Business Operations Vic Alessi, and VP, Marketing Diana Cartwright an others, had attended conferences with Frangiosa and InstallerNet employees and executives including InstallerNet VP Bill Ali and Todd Goodnight, and had even "staffed" the InstallerNet booth with InstallerNet defendant Frangiosa and employees at a conference in Las Vegas, at Frangiosa's request.

22.     Prior to June 23, 2017, Plaintiffs' Assignor, and defendants Frangiosa and InstallerNet were engaged in negotiations whereby Frangiosa and InstallerNet represented that InstallerNet wished to purchase the remaining RearVision Inventory (the "Inventory" or the "Pearl Inventory"), together with a license for limited Intellectual Property related to the sales, support and maintenance of RearVision ("the Licensed IP"). All of the Licensed IP was provided to InstallerNet only, at Frangiosa's direction, both prior to, and after,  June 23, 2017, including source code to allow updates to the phone (mobile) application, use of the PEARL domain for purposes of redirecting buyers or customers seeking customer service to InstallerNet, and use of the PEARL logos and trademarks for marketing and sales of the RearVision product.  Defendants also secured a right to

make an offer to purchase the manufacturing capability and additional parts, which was not exercised.

23.     On June 23, 2017, Defendant Frangiosa emailed to PEARL Purchase Order No. A100 (the "PO" or " Purchase Order No. A100") in the name of "American Road Products, Inc.", with terms that required the PEARL Inventory to be shipped to "American Road Products, Inc. c/o InstallerNet"; the PO required a response on June 23, 2017. When PEARL officers Karen Carte and Brian Sander noted the last minute substitution of American Road Products, Inc., an entity they had never heard of, as Purchaser in place and stead of InstallerNet, they objected and declined to proceed.

24.     In response to Pearl's objections to proceeding with American Road Products, defendant Frangiosa represented to Plaintiff's Assignor's VP of Finance Karen Carte, that defendant InstallerNet and defendant American Road Products were "the same company and not to worry about it". Unknown to Karen Carte, defendant Frangiosa had represented to Plaintiff's Assignor's VP of Business Operations, Vic Alessi, earlier in 2017 that in addition to "owning" InstallerNet, he also "owned" American Road Products, having" acquired" it in 2017.  Brian Sander and Karen Carte accepted Frangiosa's assurances, and signed the PO.

25.     PEARL justifiably relied upon Defendant Frangiosa's representations that he "owned" American Road Products, Inc., that he "owned" InstallerNet and that there was a unity of ownership between defendants American Road Products, Inc., InstallerNet, Inc., and Frangiosa, and that payment was assured just as if the PO had issued from InstallerNet, and PEARL signed Purchase Order A100, signed and dated June 23, 2017.  A true and correct copy of Purchase Order A100 is attached hereto as **Exhibit B**.

26.     Thereafter, and post-Assignment, PEARL and DSI delivered the Inventory described in PO defendants Frangiosa, American Road Products, Inc.,

c/o InstallerNet, and InstallerNet as documented in the PEARL invoices and amounts set forth below, over the course of July 14, 2017 through July 28, 2017, for a total due in the amount of $295,371.13. True and correct copies of invoices 10923, 10924, 10925, 10926 are attached hereto as **Exhibits C-1, C-2, C-3, C-4**, respectively.

| EXHIBIT | DATE | INVOICE | AMOUNT |
|---------|------|---------|--------|
| C-1 | 7.14.2017 | 10923 | $ 232,186.13 |
| C-2 | 7.24.2017 | 10924 | $    2,925.00 |
| C-3 | 7.26.2017 | 10925 | $  59,680.00 |
| C-4 | 7.28.2017 | 10926 | $       580.00 |
| | | **TOTAL:** | **$ 295,371.13** |

27.     During the course of the deliveries documented on invoices10923, 10924, 10925, and 10926, defendant Frangiosa, on behalf of InstallerNet, and InstallerNet, and each of them, corresponded with PEARL employees including VP, Finance Karen Carte; Strategic Operations Manager Joseph Morris; as well as VP, Operations Jeff Hoever; and, Accounting Manager Enrique Flores, together with PEARL's contract logistics vendor IMM to request and confirm additional Inventory. PEARL did not have any correspondence or other communications from defendants American Road Products  or from defendant Frangiosa on behalf of American Road Products, nor on behalf of American Road Products by any other person.

28.     Plaintiff has learned that from June 30, 2017 through August 17, 2017, InstallerNet Inc.'s registration as a foreign corporation was suspended by the Secretary of the Commonwealth of Massachusetts, the state in which InstallerNet maintains its Principal Place of Business, and therefore did not have the legal capacity to conduct business in the Commonwealth of Massachusetts; accordingly

Plaintiff is informed and believes that defendant, Tony Frangiosa, in directing, confirming and accepting the PEARL Inventory in the name and care of "InstallerNet, Inc.", Frangiosa accepted the Inventory in his individual capacity.

29.    Plaintiff and Plaintiff's Assignor have made numerous demands for payment to defendants Frangiosa, Witt, InstallerNet and American Products. On September 9, 2017, counsel for Plaintiff sent a further demand for payment to defendants Frangiosa and InstallerNet in the amount of $295,371.13. On September 26, 2017, counsel for Plaintiff sent a demand for payment to defendants Witt and American Products, Inc., in the amount of $295,371.13.

30.    The Defendants have failed to pay for the Inventory, and the sum of $295,371.13 remains outstanding and payable to Plaintiff at this time.

31.    On or about September 28, 2017, Plaintiff learned that defendants InstallerNet, American Products, Frangiosa, and Witt, and each of them, were engaged in use of the DSI-owned PEARL trademarks, logos, and Intellectual Property in a purposeful manner, making representations designed to mislead the public into believing that:

a.    American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired* and lawfully own Pearl Automation, Inc. as a going concern;

b.    American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired* and lawfully own some or all of the assets of Pearl Automation;

c.    American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired and lawfully own the trademarks and logos of Pearl Automation*;

d.    American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt are currently manufacturing Pearl products;

e.    *Pearl RearVision Is Now An American Road Safety Product*; *Pearl and the Pearl logo are trademarks of American Road Products, Inc. © 2017 American Road Products, Inc.*

f.    Management of the Pearl Automation domain (https://pearlauto.com), reflects ownership of Pearl Automation, Inc., its

assets, IP or products by American Road Products, InstallerNet, Tony
Frangiosa and/or Steve Witt;

   g.     *American Road acquired Pearl RearVision and the product line*
in Summer of 2017 (as stated on Steve Witt's representation on Linkedin
account); and,

   h.     Pearl Automation's  Amazon vendor account was being operated
by Pearl Automation, when Plaintiff is informed and believes that it was
actually being *illegally operated by American Road Products, InstallerNet,
Tony Frangiosa and/or Steve Witt, as  the" acquirer(s)" of Pearl Automation,
Inc., its assets, IP or products.*

   32.     On September 28, 2017, counsel for Plaintiff sent cease and desist
letters to defendants American Road Products, InstallerNet, Tony Frangiosa and
Steve Witt, notifying each that the above infringements had come to Plaintiff's
attention, and citing the defendants' use of the DSI-owned PEARL Marks, trade
dress, and other intellectual property without the permission of DSI, and
demanding that defendants American Road Products, InstallerNet, Tony Frangiosa
and Steve Witt, and each of them, immediately cease and desist all such
representations and claims related to acquisition, ownership, manufacture, or sale
of Pearl, its assets, its trademarks, logos, IP, or its products, none of which is true
or correct, and which representations and claims deprive DSI of the value of the
Pearl General Assignment, and of its lawful ownership of the assigned assets.
DSI's counsel also informed defendants American Road Products, InstallerNet,
Tony Frangiosa and Stephen Witt, and each of them, that the failure to pay for the
Inventory and the limited license which had been granted by PEARL to *sell,
market and maintain* the product, constituted a failure of consideration that voided
and/or terminated the License.

   33.     On September 26, 2017, defendant Witt responded, stating that he had
forwarded the [cease and desist] to the "new owner" [of American Road Products],

although Witt was at that time, and remains, listed as the President of American Road Products in the California foreign corporation registration.

34.     On September 28, 2017, defendant Frangiosa responded to the cease and desist letter in an email to counsel for Plaintiff by defendant Frangiosa *on behalf of InstallerNet, Inc., [and] its employee Steve Witt…[denying] use of any (PEARL) trademarks or intellectual property.*

35.     On September 30, 2017 defendant Frangiosa responded to the cease and desist letter sent to defendants American Road Products, Frangiosa and Witt, in an email sent to counsel for Plaintiff from defendant Frangiosa's InstallerNet email address (TonyF@Installernet.com), stating "on *behalf of American Road Products, Inc.",* that it  had "terminated all use of the trademarks and intellectual property once belonging to Pearl Automation which includes the website located at pearlauto.com."

36.     Despite said denials on behalf of American Road Products, InstallerNet, Tony Frangiosa and Steve Witt, the defendants and each of them, continued their infringing activities, making the same representations and claims related to acquisition, ownership, manufacture, and sale of Pearl, its assets, its trademarks, logos, IP, or its products, all of which contain unauthorized uses of the PEARL Marks and trade dress as follows:

   a.     As recently as October 10, 2017, the American Road Products website continued to carry a June 26, 2107 Press Release titled: ***AMERICAN ROAD PRODUCTS ACQUIRES PEARL REARVISION,*** claiming that American Road Products *entered into an agreement with Pearl Automation, Inc. to take over its product road map. Effective immediately the company now has responsibility of all product marketing, sales, support and software development… American Road Products will continue to support existing Pearl RearVision customers and channel partners to assure successful transition while growing the business.*

b.     As recently as October 10, 2017, the American Road Products website continued to carry an August 14, 2017 Press Release titled: ***American Road Products adds to its Leadership Team***, claiming its recent "acquisition" of Pearl RearVision.

c.     As recently as of October 10, 2017, InstallerNet continued to carry the Pearl trademark and logo on its website, suggesting acquisition, ownership, or other false representations trading on the PEARL IP without authorization to do so;

d.     As recently as of October 10, 2017, Plaintiff is informed and believes that defendants, and each of them, continued to use the PEARL vendor account on amazon.com to sell PEARL RearVision, making use of Pearl IP, trademarks, logos, PEARL founder interviews, and other marketing collateral from the Pearl website, including videos showing installation and use.

37.     All of these actions are in violation of DSI's ownership rights, and are damaging to the value of the IP and damaging to DSI's ability to effectively market and sell the IP at its highest value, for the benefit of the PEARL creditors.

## FIRST CLAIM FOR RELIEF

(Infringement of Registered Trademarks under 15 U.S.C. § 1114)

38.     Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

39.     The PEARL Marks are distinctive of goods and services originating with PEARL Automation, assigned to Plaintiff's Assignor, the owner of the PEARL Marks.  Through recent years of sales and advertising by PEARL, the PEARL Marks have become associated in the minds of consumers with the products and services produced and/or authorized by PEARL.

40.     American Road Products, InstallerNet, Tony Frangiosa and Steve Witt's unauthorized use of the PEARL Marks on their websites, in Press Releases, and in sales and promotional material, on third party websites,  exceeded the scope

of the License Agreement, and continued after the License Agreement was terminated by DSI, in direct contravention of DSI's express notification to American Road Products, InstallerNet, Tony Frangiosa and Steve Witt to cease and desist.

41.     American Road Products, InstallerNet, Tony Frangiosa and Steve Witt's unauthorized use of the PEARL Marks is likely to cause and, on information and belief, has actually caused confusion in the marketplace by creating the false and mistaken impression that American Road Products, InstallerNet, Tony Frangiosa and Steve Witt actually have acquired some or all of the assets of PEARL, and that they are the owners of the PEARL trademarks, patent rights and other IP.

42.     American Road Products, InstallerNet, Tony Frangiosa and Steve Witt unauthorized use of the PEARL Marks violates the Lanham Act, 15 U.S.C. § 1114.

43.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Plaintiff, for which Plaintiff has no adequate legal remedy.  Accordingly, the Plaintiff is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

44.     As a direct and proximate result of American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's wrongful conduct, Plaintiff has been and will continue to be damaged by, without limitation, a diminution in the value of the PEARL Marks and in their reputation and goodwill, in an amount to be proven at trial.

45.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  Plaintiff is

therefore entitled to recover three times the amount of actual damages or profits, or statutory damages, and attorney's fees and costs incurred in this action, and Defendants' profits from its infringement of the PEARL Marks pursuant to 15 U.S.C. § 1117(a) - (c).

## SECOND CLAIM FOR RELIEF

(False Designation of Origin under 15 U.S.C. § 1125(a))

46.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

47.     The PEARL Marks, including the unregistered marks and trade dress, are distinctive of goods and services originating with PEARL, and owned by DSI, in its capacity as Assignee of Pearl, as the owner of the PEARL Marks.  Through the recent years of sales and marketing by PEARL, the PEARL Marks have become associated in the minds of consumers with the products and services produced and/or authorized by Plaintiff's Assignor, PEARL.

48.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks on their websites, in Press Releases resulting in unauthorized articles in magazines and e-magazines, ecommerce platforms including, but not limited to, amazon.com, and in sales and promotional material, exceeded the scope of the License Agreement, and continued after the License Agreement was terminated by DSI, in direct contravention of DSI's express notifications to American Road Products, InstallerNet, Frangiosa and Witt.

49.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks is likely to cause and, on information and belief, has actually caused confusion in the marketplace by creating the false and mistaken impression that American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's infringing marketing materials are affiliated,

connected or associated with the PEARL, or that they originate with, or are sponsored or approved by PEARL and/or DSI.

50.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Plaintiff, for which it has no adequate legal remedy.  Accordingly,  Plaintiff is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

51.     As a direct and proximate result of American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's wrongful conduct, Plaintiff has been and will continue to be damaged by, without limitation, a diminution in the value of the PEARL Marks and in their reputation and goodwill, in an amount to be proven at trial.

52.     American Road Products', InstallerNet's, Tony Frangiosa's and Steve Witt's unauthorized use of the PEARL Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  Plaintiff DSI is therefore entitled to recover three times the amount of actual damages or profits, and attorney's fees and costs incurred in this action, and Defendants' profits from its infringement of the PEARL Marks pursuant to 15 U.S.C. § 1117(a).

## THIRD CLAIM FOR RELIEF

(Trademark Dilution Under 15 U.S.C. § 1125(c))

53.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

54.     The PEARL Marks are famous and distinctive in that they are widely recognized by the general consuming public as a designation of PEARL as the source of the goods or services represented by the PEARL Marks.

55.     Defendants' unauthorized uses of the PEARL Marks impair the distinctiveness of the PEARL Marks and, as such, cause dilution by blurring.

56.     Defendants' uses of the PEARL Marks have caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Plaintiff in the diminution of the value and goodwill of the PEARL Marks, and in their impairment to serve as a trademarks, for which Plaintiff has no adequate legal remedy.  Accordingly, Plaintiff is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

57.     Defendants' wrongful use of the PEARL Marks commenced after October 6, 2006, when the Trademark Dilution Revision Act of 2006 became effective.  Defendants' wrongful use of the PEARL Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating circumstances. Plaintiff is therefore entitled to recover three times the amount of their actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the PEARL Marks.

## FOURTH CLAIM FOR RELIEF

(False Advertising Under 15 U.S.C. § 1125(a))

58.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

59.     Defendants have used the PEARL Marks in commercial advertising or promotion for their vehicle products and services, including but not limited to their advertising and promotions online at the websites *www.installernet.com* and *www.americanroadproducts*.  Said use is a false statement of fact as to the nature, characteristic and qualities of Defendants' interest, if any, in PEARL RearVision, in that it conveys the false message to consumers that their "ownership" of the

PEARL assets, trademarks, logos and IP, goods and services, are affiliated or associated with, or sponsored, or approved by PEARL and/or DSI.

60.     Defendants' representations are commercial advertising in that they are speech related solely to the economic interests of Defendants and their audience, by Defendants who are in commercial competition with Plaintiff and its authorized licensees within the automobile industry, for the purpose of influencing consumers to purchase Pearl RearVision and Defendants' other products by causing them to believe that defendants have acquired some or all of the assets of PEARL, own PEARL as a going concern, own RearVision, own the rights to manufacture RearVision, and are sufficiently disseminated to the relevant purchasing public online on Defendants' websites.

61.     Defendants' false statements implicating PEARL and/or Plaintiff's sponsorship or approval of their goods and services is likely to deceive and/or has actually deceived a substantial segment of its audience.

62.     Defendants knew or should have known that their statements were false or likely to mislead consumers.  Defendants' deception is material, in that it is likely to influence its customers' decision to purchase Defendants' goods or services and to dissuade competitors who may wish to actually purchase the PEARL Marks, patents and other IP rights.

63.     Defendants caused their false statements to enter interstate commerce in various ways, including through online advertising and promotion.

64.     DSI, as Pearl's Assignee, licenses the PEARL Marks for use by competing purveyors of goods and services throughout the United States. Defendants directly compete with Plaintiff's licensees in connection with these goods and services.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been and will continue to be damaged by, without limitation, lost sales

and diminution in value of the PEARL Marks as saleable IP for the benefit of the PEARL creditors, a diversion of profits, and/or a lessening of the goodwill associated with the PEARL Marks.

66.     Defendants' wrongful use of the PEARL Marks is knowing, deliberate, willful, fraudulent, and without extenuating circumstances.  Plaintiff is therefore entitled to recover three times the amount of their actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the PEARL Marks.

## FIFTH CLAIM FOR RELIEF

(Common Law Trademark Infringement)

67.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

68.     Defendants are using the PEARL Marks in commerce in connection with their vehicle products sales and services and in the advertising and promotion to the general public of those products and related services, seeking to bolster and improve their respective credibility in the automotive after-market by stating that they "own Pearl Automation, Inc.", "own the PEARL trademarks and logos", "have acquired Pearl Automation, Inc.", "have acquired the Pearl Assets", "have acquired "Pearl RearVision", will be "growing the Pearl business", and "will be manufacturing the Pearl products".

69.     Defendants never received Plaintiff's or Plaintiff's Assignor's authorization to use the PEARL Marks in connection with the knowingly false representations that they "own Pearl Automation, Inc.", "own the PEARL trademarks and logos", "have acquired Pearl Automation, Inc.", "have acquired the Pearl Assets", "have acquired "Pearl RearVision", will be "growing the Pearl business", and "will be manufacturing the Pearl products", in connection with their vehicle products sales and services.

70.    Defendants' use of the PEARL Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' vehicle after-market products and services and/or the websites on which those products and services are being marketed are affiliated, connected or associated with ownership, or that they originate with, or are sponsored or approved by PEARL or Plaintiff.

71.    Plaintiff is  informed and believes, and based thereon alleges, that Defendants' purpose in using the PEARL Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' vehicle after-market products and services and/or the websites on which those products and services are being marketed are affiliated, connected or associated with PEARL, or that they originate with, or are sponsored or approved by PEARL, and to trade on the substantial, reputation and goodwill associated with the PEARL Marks. Defendants' use of the PEARL videos, featuring the PEARL founders and their successful APPLE histories is clearly intended to mislead the public into believing that Defendants, and each of them, are affiliated with the founders of PEARL, that they "own Pearl Automation, Inc.", "own the PEARL trademarks and logos", "have acquired Pearl Automation, Inc.", "have acquired the Pearl Assets", "have acquired "Pearl RearVision", will be "growing the Pearl business", and "will be manufacturing the Pearl products", all in an effort to promote the defendants' credibility and promote sales of their products and services.

72.    Defendants' unauthorized use of the PEARL Marks violates the common law of the Commonwealth of Massachusetts.

73.    Defendants' unauthorized use of the PEARL Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Plaintiff in the diminution of value and goodwill of the PEARL Marks, and in their impairment to serve as trademarks, for which Plaintiff has no adequate legal

remedy.  Accordingly, Plaintiff is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the PEARL Marks and in its reputation and goodwill, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

(Trademark Dilution in Violation of

Mass. Gen. Laws ch. 110H § 14)

75.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

76.     The PEARL Marks are famous and distinctive in Massachusetts in that they are recognized by the general consuming public of this Commonwealth as a designation of PEARL as the source of the goods or services represented by the PEARL Marks.

77.     Defendants began using the PEARL Marks without authorization from PEARL or DSI after the PEARL Marks had become recognized.

78.      Defendants' unauthorized use of the PEARL Marks is likely to cause dilution of the famous PEARL Marks.

79.     Defendants' unauthorized use of the PEARL Marks has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiff, for which it has no adequate legal remedy.

80.     Defendants' dilution of the PEARL Marks was willful, as evidenced by their continuing use of the PEARL Marks after being advised of CSL's and the Trust's exclusive trademark rights, entitling Plaintiff to an award of up to three times Defendants' profits from, and up to three times all damages suffered by

reason of Defendants' wrongful use of the PEARL Marks, pursuant to Mass. Gen. Laws ch. 110H, § 14.

### SEVENTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

81.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

82.     Defendants' misconduct constitutes unfair competition in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

83.     Defendants' misconduct has resulted in damage to Plaintiff, without limitation, in the form of lost profits and damage to reputation and goodwill.

84.     The acts of unfair competition alleged herein were committed with oppression, fraud and malice.  Specifically, Defendants, and each of them, used the PEARL Marks with knowledge that Plaintiff owns and controls the exclusive right to such use, that the terms of the License Agreement limited Defendants' use of the PEARL Marks, that Defendants' use of the PEARL Marks exceeded the scope of permission granted by the limited License Agreement, that their conduct served to breach the License Agreement and that, as a result, it was terminated, and that their continuing use of the PEARL Marks was unauthorized as reflected by the numerous cease and desist letters that Plaintiff has sent to Defendants, that Defendants' use of the PEARL Marks at all times caused consumer confusion and unfairly traded on the goodwill belonging to Plaintiff, and that Plaintiff is and will continue to be injured by this continuing conduct.  Therefore, the Plaintiff requests the imposition of exemplary damages pursuant to ALM GL ch. 110H, §14.

## EIGHTH CLAIM FOR RELIEF

(Violation of Massachusetts General Laws Chapter 93A, § 2 & 11)

85.    Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

86.    Plaintiff is a "person" who engages in the conduct of trade or commerce, pursuant to Mass. Gen. Laws c. 93A, §§  1, 2 & 11.

87.    Each of the Defendants is a "person" who engages in the conduct of trade or commerce, pursuant to Mass. Gen. Laws c. 93A, §§ 1, 2 & 11.

88.    Massachusetts General Laws Chapter 93A, §§  2 and 11, prohibits the use or employment by any person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . Defendants are unfairly competing with Plaintiff's ownership of the PEARL Marks, trade dress and IP, by falsely claiming that they "own Pearl Automation, Inc.", "own the PEARL trademarks and logos", "have acquired Pearl Automation, Inc.", "have acquired the Pearl Assets", "have acquired "Pearl RearVision", will be "growing the Pearl business", and "will be manufacturing the Pearl products", without Plaintiffs' permission.  Defendants' misconduct set forth above constitutes unfair competition and unfair and deceptive trade practices in violation of Massachusetts General Laws Chapter 93A, §§ 2 and 11.

89.    Defendants have engaged in a business practice of ongoing unlawful trademark and trade dress infringement in violation of Plaintiffs' rights and in order to compete unfairly and damage Plaintiff.  Unless Defendants' unfair practices against Plaintiff are enjoined, Plaintiff will continue to sustain financial injury and irreparable damage to the PEARL business reputation, and the value of the PEARL IP will decrease in the market.

90.    Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiff, for which it has no

adequate legal remedy.  Accordingly, Plaintiff is entitled to provisional, preliminary and permanent injunctive relief.  Plaintiff is also entitled to payment for all property obtained from Plaintiffs by Defendants, and all payments Defendants have received as a direct result of their wrongful conduct.

91.     Defendants' use or employment of unfair methods of competition and their unfair and deceptive acts or practices, as described more fully herein, occurred primarily and substantially within the Commonwealth of Massachusetts.

92.     Defendants' use or employment of unfair methods of competition and their unfair and deceptive acts or practices, as described more fully herein, were willful and knowing.  As such, Plaintiff is entitled to recovery of no less than two and no more than three times Plaintiff's actual damages, pursuant to Mass. Gen. Laws c. 93A, § 11.

93.     As a result of Defendants' violations of Chapter 93A, Plaintiff is entitled to an award of its reasonable attorneys' fees and costs incurred in this action.

## NINTH CLAIM FOR RELIEF

(Breach of Contract)

94.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

95.     Plaintiff and Plaintiff's Assignor performed all obligations and conditions on its part to be performed under the Purchase Order, except those which it was excused from performing.

96.     Defendants, and each of them, breached the Purchase Order in the following respects, among others:

a.     Defendants, and each of them, have failed to make payment in the sum of $295, 371.13 for the Inventory that they ordered, has been delivered, and they have been actively marketing and selling;

b.     Defendants, and each of them, have violated the terms of the limited license which was granted to American Road Products, Inc., engaged in the use of the DSI-owned PEARL trademarks, logos, and Intellectual Property in a purposeful manner, making representations designed to mislead the public into believing that:

   *i.*     American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired* and lawfully own Pearl Automation, Inc. as a going concern;

   *ii.*     American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired* and lawfully own some or all of the assets of Pearl Automation;

   *iii.*     American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt *have acquired and lawfully own the trademarks and logos of Pearl Automation*;

   iv.     American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt are currently manufacturing Pearl products;

   *v.*     *Pearl RearVision Is Now An American Road Safety Product*; *Pearl and the Pearl logo are trademarks of American Road Products, Inc. © 2017 American Road Products, Inc.*

   *vi.*     Management of the Pearl Automation domain (https://pearlauto.com), reflects ownership of Pearl Automation, Inc., its assets, IP or products by American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt;

   *vii.*     *American Road acquired Pearl RearVision and the product line* in Summer of 2017 (as stated on Steve Witt's representation on Linkedin account); and,

   *viii.*     Pearl Automation's  Amazon vendor account was being operated Pearl Automation, when Plaintiff is informed and believes that it was actually being *illegally operated by American Road Products, InstallerNet, Tony Frangiosa and/or Steve Witt, as  the" acquirer(s)" of Pearl Automation, Inc., its assets, IP or products.*

c.     Despite notice to Defendants, and each of them to cease and desist in the above practices, and despite denials that they were continuing such practices, the defendants and each of them, continued their infringing activities, making the same representations and claims related to acquisition,

ownership, manufacture, and sale of Pearl, its assets, its trademarks, logos, IP, or its products, all of which contain unauthorized uses of the PEARL Marks and trade dress as follows:

     *i.*    As recently as October 10, 2017, the American Road Products website continued to carry a June 26, 2107 Press Release titled: AMERICAN ROAD PRODUCTS ACQUIRES PEARL REARVISION, claiming that American Road Products entered into an agreement with Pearl Automation, Inc. to take over its product road map. Effective immediately the company now has responsibility of all product marketing, sales, support and software development… American Road Products will continue to support existing Pearl RearVision customers and channel partners to assure successful transition while growing the business.

     *ii.*    As recently as October 10, 2017, the American Road Products website continued to carry an August 14, 2017 Press Release titled: American Road Products adds to its Leadership Team, claiming its recent "acquisition" of Pearl RearVision.

     *iii.*    As recently as of October 10, 2017, InstallerNet continued to carry the Pearl trademark and logo on its website, suggesting acquisition, ownership, or other false representations trading on the PEARL IP without authorization to do so;

     *iv.*    As recently as of October 10, 2017, Plaintiff is informed and believes that defendants, and each of them, continued to use the PEARL vendor account on amazon.com to sell PEARL RearVision, making use of Pearl IP, trademarks, logos, PEARL founder interviews, and other marketing collateral from the Pearl website, including videos showing installation and use.

97.    As a direct and proximate result of Defendants American Road Products, InstallerNet, Tony Frangiosa and Steve Witt's collective and singular breaches of the Purchase Order,  violation of the limited license granted to American Road Products, Inc., and infringement of the PEARL trademarks, trade dress and IP owned by Plaintiff, Plaintiff DSI  has been damaged in various respects, including, without limitation, the value of the Inventory, as well as a

diminution in the value of the PEARL trademarks, trade dress, IP, reputation, and goodwill, in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

(Quantum Meruit)

98.     Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

99.     Until defendant American Road Products repudiated its contract, Plaintiff had fully performed the contract: Plaintiff's Assignor had delivered the Inventory; had provided to defendants American Road Products, InstallerNet, Frangiosa and Witt the source code to allow the defendants to update the telephone applications for iOS and Android phones; had provided the marketing and sales collateral; had provided access to the manufacturing capability and parts available should American Road Products wish to make an offer to purchase the manufacturing capability and parts available, and has otherwise performed to date all conditions precedent on its part to be performed.

100.    Defendants have failed and refused to complete the contract through payment for the Inventory and other value delivered and wishes to return the Inventory.  Since Plaintiff is the Assignee for the benefit of the Pearl creditors, and has no use for the Inventory, it sold the Inventory to American Road Products, and its alter egos InstallerNet, Frangiosa and Witt, at a 70% discount, rather than the typical 25% discount off MSRP.

101.    The reasonable value of the goods and services provided to Defendants to the date of repudiation was at least double the $295,371.13 charged.

## ELEVENTH CLAIM FOR RELIEF

(Account Stated)

102.   Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

103.   No part of the account has been paid, and there is due to Plaintiff the sum of $295, 371.13 with statutory interest.

## TWELTH CLAIM FOR RELIEF

(Fraud In The Inducement)

104.   Plaintiff DSI incorporates the allegations of each foregoing paragraph as though fully set forth herein.

105.   Defendant Frangiosa and InstallerNet misrepresented the relationship of American Road Products, InstallerNet, Frangiosa and Witt in an effort to purposefully induce PEARL to sign the PO, over PEARL's objections, to the unknown, un-vetted company, American Road Products.

106.   At all times relevant herein, defendant Frangiosa knew that the maker InstallerNet and American Road Products were not "the same company". Frangiosa also failed to inform Carte and Sander that he had "acquired" American Road Products as he had told Vic Alessi. Frangiosa also assured Pearl VP of Finance Karen Carte that she did not need to "lawyer up" regarding her concerns about the Purchase Order as they could work it out, and accordingly, Carte did not engage counsel to review the change to American Road Products as Purchaser.

107.   Defendant Frangiosa made the representations about the "relatedness" of InstallerNet and American Road Products, with the intention of inducing Carte and Sander, on behalf of PEARL, to rely, and in turn, to sign the American Road Products Purchase Order A100.

108.   All of this has resulted in injury to Plaintiff's Assignor PEARL, which acted in justifiable reliance on the representations by Frangiosa, particularly in

view of the fact that the transfer of the licensed IP was arranged and occurred strictly between PEARL and InstallerNet employees, bolstering the justification of the reliance, all to Plaintiff's damage insofar as now Frangiosa claims that InstallerNet is not a party to the transaction documented in PO A100, and both InstallerNet and American Road Products refuse to pay for the Inventory and the limited license.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DSI prays for relief as follows:

1. The damages sustained by Plaintiffs and an award of the entire amount of Defendants' profits arising from Defendants' infringement of the Pearl Automation Marks;

2. Up to three times the damages sustained by Plaintiffs and three times the Defendants' profits;

3. Three times the amount of damages or profits, whichever is greater; or statutory damages of up to $2 million per counterfeit mark used by Defendants;

4. Exemplary damages;

5. Injunctive relief prohibiting Defendants from any future unauthorized use of the Pearl Automation Marks;

6. Plaintiffs' costs in this action and reasonable attorney's fees and expenses;

7. The sum of $295, 371.13 with statutory interest;

8. Punitive damages; and,

9. For such additional and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff DSI hereby demands a trial by jury on all claims so triable.


DSI ASSIGNMENTS, LLC, SOLELY
AS ASSIGNEE FOR THE BENEFIT OF
CREDITORS OF PEARL AUTOMATION
INC.,

By its attorneys,


/s/ Michael P. Connolly
Michael P. Connolly (BBO #637642)
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
Phone: (617) 457-4000
Fax: (617) 382-4868
mconnolly@murthalaw.com

and

Kathryn N. Richter (SBN# 100129)
SEDGWICK LLP
333 Bush Street, 30th Floor
San Francisco, CA 94104-2834
Phone:  (415) 781-7900
Fax:  (415) 781-2635
kathryn.richter@sedgwicklaw.com

(*pro hac vice* admission pending)


Dated: October 11, 2017