UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DSI ASSIGNMENTS, LLC, SOLELY AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF PEARL AUTOMATION INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ROAD PRODUCTS, INC.; INSTALLERNET, INC.; ANTHONY FRANGIOSA; Does 1-50, <br><br> Defendants. | CASE NO. 1:17-cv-11963 |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff DSI Assignments, LLC ("DSI"), solely as Assignee for the benefit of Creditors of Pearl Automation Inc. ("Pearl"), hereby opposes American Road Products, Inc. ("ARP"), InstallerNet, Inc. ("InstallerNet"), and Anthony Frangiosa's ("Frangiosa") (collectively the "Defendants") Partial Motion to Dismiss Amended Complaint ("Partial Motion to Dismiss") through which the Defendants seek dismissal of Count VIII (unfair and deceptive trade practices in violation of Mass. Gen. Laws. c. 93A § 11), Count X (quantum meruit), and Count XI (fraudulent inducement) of DSI's Amended Complaint (the "Amended Complaint").

As discussed in detail below, the Partial Motion to Dismiss should be denied in its entirety because: (i) DSI has sufficiently pled that the Defendants' unfair and deceptive conduct occurred "primarily and substantially" in the Commonwealth and Defendants have failed to meet their burden of demonstrating that the Defendants' conduct occurred outside of Massachusetts; (ii) DSI has sufficiently pled that the Defendants have failed to pay DSI for the value of goods

delivered to Defendants; and (iii) DSI has sufficiently pled that it reasonably relied on Frangiosa's statements that payment for the Pearl inventory (the "Inventory") and licensed intellectual property was assured regardless of whether InstallerNet or ARP was identified on Pearl Purchase Order No. A100 (the "PO"). DSI also has sufficiently alleged that Defendants' actions, including their failure to pay and the fraudulent representations by Frangiosa, directly harmed, and continue to harm DSI. Defendants' Partial Motion to Dismiss and therefore should be denied.

**Factual Background**

The allegations relevant to the Defendants' Partial Motion to Dismiss concern Defendants' failure to pay for the value of the Inventory delivered by Pearl to the Defendants in Massachusetts and Defendants' continued infringement of Pearl's trademarks and other intellectual property rights from Massachusetts. See Amended Complaint ("Compl.")[1] e.g., ¶¶ 25, 30, 31, 35. In particular, Defendants fraudulently induced Pearl to execute the PO through misrepresentations that InstallerNet and ARP were, in practice even if not in form, the same company, that there was a unity of ownership between the companies, and that, as such, payment for the Inventory was assured regardless of which entity was identified in the PO. Compl. ¶¶ 23, 24, 99, 100.

Prior to the execution of the PO, Pearl and Frangiosa had developed a professional relationship regarding development of programs and initiatives to promote the sale of Pearl products. Compl. ¶ 20. In 2016 and 2017, Pearl, and Frangiosa and InstallerNet began discussions whereby Frangiosa represented that InstallerNet wished to purchase Pearl's remaining Inventory – consisting of Pearl's "RearVision" aftermarket automobile rear view

---

[1] DSI filed its amended Complaint on January 5, 2018 pursuant to Fed. R. Civ. P. 15(a)(1)(B). As such the Amended Complaint is the operative Complaint in this action.

camera – together with a license for limited intellectual property related to the sales, support and maintenance of RearVision. Compl. ¶¶ 15, 20, 21.

In furtherance of their negotiations, on June 23, 2017, Frangiosa emailed the PO in the name of "American Road Products, Inc.," to Pearl, with terms requiring that the Inventory be shipped to "American Road Products, Inc. c/o InstallerNet" at InstallerNet's Massachusetts address. Compl. ¶ 22. In response to Pearl's objection to proceeding with ARP, after all previous discussions concerned InstallerNet, Frangiosa represented that he "owned" ARP, that he "owned" InstallerNet, and that there was a unity of ownership between ARP, InstallerNet, and Frangiosa. Compl. ¶ 23, 24, 90. 103-106. Frangiosa further assured Pearl that it would receive payment just as if the PO had issued from InstallerNet.[2] Id. Based upon Frangiosa's representations, Pearl signed the PO. Compl. ¶ 24 & Exh. B.

Thereafter, DSI delivered the Inventory to Defendants, "c/o InstallerNet" at InstallerNet and ARP's identical business address of 85 Flagship Drive, North Andover, Massachusetts. Compl. ¶ 25. DSI also sent Defendants invoices totaling $295,371.13, which amount represented a 70% discount for the Inventory, far in excess of the typical 25% discount provided to other parties. Compl. ¶¶ 99, 100 & Exhs. C-1 – C-4. During the course of the Inventory deliveries, Frangiosa, on behalf of InstallerNet, and InstallerNet, corresponded with Pearl to request and confirm additional Inventory. Compl. ¶ 26. Pearl never received any correspondence or other communications from ARP or from Frangiosa on behalf of ARP, nor on behalf of ARP by any other person. Id.

---

[2] Of note, both ARP and InstallerNet maintain the same principal places of business at 85 Flagship Drive, Suite F, North Andover, Essex County, Massachusetts. Compl. ¶¶ 3, 4. Frangiosa is the sole officer and director of American Road Products, and is the Registered Agent in the Commonwealth of Massachusetts and is a shareholder, officer, and director of InstallerNet, listed as President and director of InstallerNet. Compl. ¶¶ 6, 7. Frangiosa himself is believed to reside in Massachusetts. Compl. ¶ 5.

3

Despite numerous demands for payment, Defendants have failed to pay for the Inventory and the invoiced amount of $295,371.13 remains outstanding and payable to DSI. Compl. ¶ 30. In addition, Defendants continue to use DSI-owned trademarks, logos, and intellectual property, without making any payment to DSI or having authority to do so. Compl. ¶ 31. DSI is entitled to recover all damages suffered as a result of Defendants' unfair and deceptive acts or practices (Count VIII) and as a result of Frangiosa's fraudulent statements in inducing Pearl to deliver the Inventory (Count XI). Plaintiff is also entitled to seek alternate recovery based on a quantum meruit theory (Count X), to the extent the Court determines that the PO is not an enforceable agreement as to all or any of the Defendants. Defendants' motion should be denied and the parties should be allowed to commence discovery on all claims.

## ARGUMENT

In order to survive a motion to dismiss, a plaintiff must plead sufficiently specific allegations "to raise a right of relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). All reasonable inferences must be drawn in a Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, for purposes of Mass. Gen. Laws c. 93A, § 11, Defendants bear the burden of proof in establishing that the alleged conduct did not occur primarily and substantially in the Commonwealth. See Mass. Gen. Laws c. 93A, § 11 ("[f]or the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the Commonwealth."); Roche v. Royal Bank of Canada, 109 F.3d 820, 829 (1st Cir. 1997) ("Contrary to the standard burden of proof on jurisdictional questions, here the burden is on defendants to show that their misconduct occurred primarily and substantially outside Massachusetts."). When evaluated against these standards,

4

Counts VIII, X and IX of Plaintiff's Amended Complaint easily survive Defendants' Partial Motion to Dismiss.

> **A.  DSI has sufficiently alleged that Defendants' unfair and deceptive acts occurred "primarily and substantially" in the Commonwealth.**

Here, DSI unquestionably has alleged that Defendants' unfair and deceptive acts occurred primarily and substantially in Massachusetts.  As pled in the Amended Complaint, Defendants InstallerNet and ARP both maintain a principal place of business at the same address in Massachusetts.  Compl. ¶ 3, 4.  Furthermore, according to filings made with the Secretary of the Commonwealth's Corporations Division in connection with Frangiosa's status as registered agent for both InstallerNet and ARP, Frangiosa maintains a Massachusetts address.  Compl. ¶ 5.

In addition to being located in Massachusetts, and controlled by Frangiosa from Massachusetts, Defendants also received the Inventory in Massachusetts and have failed to pay for such goods from Massachusetts.  Compl. ¶¶ 25, 30, 90 & Exhs. B and C-1 – C4.  In connection with the PO, DSI has further alleged that Frangiosa, both individually and on behalf of ARP and InstallerNet, made misrepresentations to induce Pearl to sign the PO.  Compl. ¶¶ 23, 24, 90, 103-106.  Still further, ARP and InstallerNet continue to use and infringe upon the Pearl trademarks and to market false statements concerning Pearl from the Commonwealth.  See e.g. Compl. ¶31.  These allegations concerning where Defendants' unfair or deceptive conduct occurred, at a minimum, "raise a right of relief above the speculative level" sufficient to support a Chapter 93A claim.  See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011) citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

The cases Defendants rely upon do not require dismissal of Plaintiff's Chapter 93A claims on a Rule 12(b)(6) motion either.  For example, in Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 781 N.E.2d 787 (2003), the plaintiff's contacts with the

5

defendant were directed from Washington, D.C. and only involved neutral corporate policies from plaintiff's headquarters in Massachusetts. Here, DSI has alleged that Frangiosa directed the Defendant entities to receive the Inventory in Massachusetts, to refuse to pay for that Inventory from Massachusetts, and nonetheless to continue to use and infringe upon DSI's intellectual property from Massachusetts in connection with their continuing attempts to re-sell the Inventory.[3] Furthermore, in trademark cases, Massachusetts courts have noted that "the use of the offending trademark is presumably calculated to hurt plaintiff's business in the state where it is used by the defendant." Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 191 (D. Mass. 2012). Plaintiff has alleged Defendants' infringement of Plaintiff's trademarks and trade dress—including the placement of infringing material on ARP's website – has been carried out from Defendants' principal place of business in Massachusetts, or has been the result of defendant Frangiosa's direction or oversight on all Defendants' behalf from within Massachusetts. Compl. ¶ 31, 90, 103-106.

While DSI has sufficiently alleged conduct in Commonwealth to support its 93A claim, Defendants, for their part, have not met their burden to demonstrate that their acts did <u>not</u> occur primarily and substantially in the Commonwealth. Instead, Defendants point generally to the parties' states of incorporation and rely on the bare and unsupported statement in a footnote that "the negotiations regarding the Purchase Order took place primarily in California." See Partial

---

[3] Defendants' reliance on Evergreen and Beeche is also unavailing. In Evergreen, the Court noted that plaintiff "barely mentions Massachusetts, and when it does, fails to identify a single deceptive act or practice or 'dominant event' that is alleged to have occurred in Massachusetts." Evergreen Partnering Group, Inc. v. Pactiv Corp., Civ. Action No. 11-10807-RGS, 2014 WL 304070, at *4 (D. Mass. January 28, 2014). Here, as stated above, DSI alleges that the Defendants received goods in Massachusetts, failed to pay from Massachusetts, and continue to infringe upon DSI-owned trademarks from Massachusetts. Similarly, in Beeche, the Court allowed a motion to dismiss a Chapter 93A claim based on an express determination that "there is no allegation that any unfair or deceptive acts occurred primarily and substantially within Massachusetts." Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc., No. 12-CV-11121-DJC, 2013 WL 5550673, at *3 (D. Mass. Sept. 23, 2013). Again, these cases are factually distinguishable, where DSI has alleged facts demonstrating that Defendants' unfair and deceptive conduct occurred in Massachusetts.

Motion to Dismiss, p. 7, n. 5. This unattributed statement should be disregarded in its entirely for purposes of the present motion to dismiss. Even if considered, this statement only serves to highlight the factual dispute between the parties regarding where the conduct underlying Plaintiff's claims took place. Where Plaintiff has plausibly alleged the Defendants' activities took place principally in Massachusetts, this factual dispute cannot be resolved through a Rule 12(b)(6) motion.[4]

Moreover, where a complaint, as is the case here, sets forth sufficient facts to support a Chapter 93A claim, Massachusetts courts have routinely found that a motion to dismiss is not appropriate to determine whether Defendants' conduct has occurred primarily and substantially in Massachusetts. As set forth in Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., in which the court denied a defendant's challenge concerning the sufficiency of allegations concerning the alleged trademark infringement, "[d]ue to the fact-finding process necessarily involved in evaluating the issue, 'this particular ground for challenging a c. 93A claim—absent some extraordinary pleading concession by a claimant—cannot be resolved on Rule 12 motions' . . . [D]espite Defendants' contentions, this issue is an 'affirmative defense' to be decided 'on the basis of factual findings' which are not appropriately made at the pleading stage." 733 F. Supp. 2d 204, 213 (D. Mass. 2010) (internal citations omitted); see also CardiAQ Valve Techs., Inc. v. Neovasc, Inc., 57 F. Supp. 3d 118, 124 (D. Mass. 2014) (court denied motion to dismiss based upon allegations asserted in complaint that "[defendant] breached the NDA, misappropriated trade secrets and fraudulently induced [plaintiff] to share confidential and proprietary

---

[4] In the absence of a fully developed record after discovery, Defendants' reliance on Fishman and Sonoran is likewise misplaced. In Fishman, Chapter 93A claims were dismissed only after "extensive discovery and shortly before trial." Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 190 (1st Cir. 2012). In Sonoran, Chapter 93A claims were dismissed only through summary judgment proceedings and discovery which demonstrated that the only alleged conduct in Massachusetts concerned the location of the defendants' counsel. Sonoran Scanners, Inc. v. Perkinelmer, Inc., 585 F.3d 535, 546 (1st Cir. 2009).

7

information" determining, "whether those allegedly unfair and/or deceptive acts meet the standard of having occurred "primarily and substantially" within Massachusetts is a question to be addressed after discovery."). Therefore, Defendants' motion to dismiss should be denied as to Count VIII, because, at a minimum, no discovery has taken place upon which any factual findings may be made with respect to the arguments Defendants make in their motion.

Finally, Defendants' focus on the location of the harm to DSI is misplaced. In particular, Defendants misinterpret the requirements of Chapter 93A by attempting to impose a statutory requirement that a plaintiff allege that harm or loss was suffered in Massachusetts. This is not what the statute requires by its plain language; instead, it requires that the unfair or deceptive acts or practices "occurred primarily and substantially within the commonwealth."[5] As stated above, Plaintiff has sufficiently met this pleading threshold. In any case, Plaintiff has adequately alleged that it suffered damages as a result of Defendants' Massachusetts-based Chapter 93A violations. See Compl. ¶¶ 88 -89. To the extent Defendants wish to further explore the nature or extent of Plaintiff's damages, they can do so through the discovery process, but dismissal at the Rule 12(b)(6) stage is inappropriate. Accordingly, the Amended Complaint adequately states a cognizable claim under Mass. Gen. Laws c. 93A, § 11 and Defendants' motion should be denied.

**B. DSI has sufficiently alleged that Defendants received valuable Inventory and rights without any payment for the value thereof.**

The Amended Complaint also sets forth sufficient factual allegations to support a claim for quantum meruit in Count X based upon the value of the Inventory and intellectual property rights Defendants received without paying for such value. "A claim for unjust enrichment

---

[5] To this point, Bushkin Assoc., Inc. v. Raytheon Co. does not support Defendants' apparent contention that the location of the loss is the primary or required focus of a court's analysis of a Chapter 93A claim. In particular, unlike in Bushkin, where the court determined that the contacts "show no primary involvement with Massachusetts" and no loss in Massachusetts, here the exact opposite is true. DSI alleges that it delivered Inventory directly to Massachusetts, that Defendants have failed to pay for the Inventory from Massachusetts, and that Defendants continue to use and infringe upon DSI's intellectual property from Massachusetts. Compare Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 638-39 (1985).

8
8952427v1

requires three elements: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.'" Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 52 (D. Mass. 2013), amended in part (July 1, 2013), citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir.2009).

DSI has clearly alleged facts sufficient to support its claim for quantum meruit. First, DSI has alleged that it supplied the Inventory to the Defendants and granted a limited license to use Pearl's intellectual property. See e.g. Compl. ¶ 25. Furthermore, as stated above, DSI provided the Inventory at a significant discount. Compl. ¶ 99, 100. In fact, DSI sold the Inventory at a 70% discount, rather than the typical 25% discount off MSRP. Id. As a result, the reasonable value of the Inventory supplied to Defendants was at least double the $295,371.13 charged. Id. On account of their receipt of the steep discount and their continuing use Pearl's intellectual property without payment, Defendants have unquestionably received a benefit equal to or greater than the stated invoice amounts.

Defendants' reliance on Boswell and Zurich, which state that an unjust enrichment claim will not stand where an express contract governs the dispute, is misplaced. Here, DSI's quantum meruit claim concerns benefits conferred by DSI to Defendants above and beyond the terms of the PO. Second, based upon Defendants prior relationship, it is unquestionable that Defendants knew that they were receiving goods and a limited intellectual property license at a significant discount. Compl. ¶ 21. Finally, Defendants have failed and refused to pay for the Inventory but nonetheless have retained the Inventory and have continued the unauthorized use of intellectual property rights. See e.g. Compl. ¶¶ 30, 32, 35. It would be inequitable, at the very least, for

9
8952427v1

Defendants to retain the Inventory they received while not paying for it.[6] As pled, Count X states a claim for relief in the nature of quantum meruit as an alternative theory of recovery. Thus, Defendants' Partial Motion to Dismiss as to Count X should be denied.

    C.    **Pearl reasonably relied on Frangiosa's fraudulent statements in connection with the PO.**

DSI has stated with particularity a claim for fraudulent inducement based upon Frangiosa's last minute substitution of ARP for InstallerNet in connection with the PO and Frangiosa's representations concerning the relationship between ARP and InstallerNet. In particular, Frangiosa and InstallerNet misrepresented the relationship of ARP, InstallerNet, and Frangiosa in a purposeful effort to induce Pearl to sign the PO. See e.g. Compl. ¶¶ 103-106. In the course of negotiations, which occurred in and around June 2017, Frangiosa specifically represented that he "owned" both ARP and InstallerNet, that the entities were "the same company and not to worry about it," and that DSI should not "lawyer up" in connection with the transaction. Compl. ¶ 23, 24, 103-106. Frangiosa also represented that, because of the unity of ownership between ARP and InstallerNet, payment from ARP was assured just as if the PO had issued from InstallerNet. Compl. ¶ 24 & 103. Despite such representations, as DSI has alleged, Frangiosa knew that InstallerNet and ARP were not "the same company" for purposes of payment as he had assured Pearl representatives. Compl. ¶ 104. Nonetheless, through these representations, Frangiosa led Pearl to believe that payment was assured regardless of which entity was named on the PO.

DSI has pled sufficient facts to show that Pearl's reliance on Frangiosa's statements was reasonable. As such, dismissal at this stage would be improper. "[R]eliance is generally a

---

[6] This is particularly true where, from a review of the publicly available Amazon.com website, it appears that Inventory has been sold to third parties, who are then reselling Inventory on Amazon. Yet, Defendants continue to refuse to pay their debt to DSI.

question of fact for the jury, though in some circumstances a party's reliance on oral statements may be deemed unreasonable as a matter of law in light of contradictory written statements." Computer Sales Int'l, Inc. v. Lycos, Inc., No. CIV.A.05-10017 RWZ, 2005 WL 3307507, at *4 (D. Mass. Dec. 6, 2005) (denying a motion to dismiss and for summary judgment and stating: "Given that reliance is generally a question of fact…Lycos's status as a sophisticated business—while relevant to the reasonableness of its reliance…does not alone condemn its fraud claim." ) (internal citations omitted); see also Rodi v. S. New England Sch. of Law, 389 F.3d 5, 16 (1st Cir. 2004) ("reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury").

While it is apparent from filings made with the Secretary of the Commonwealth's Corporations Division that ARP and InstallerNet were separate legal entities, it was not unreasonable for Pearl to believe, based on Frangiosa's unequivocal statements, that he was treating both companies as one in the same for delivery and payment purposes.[7] Compl. ¶ 24, 25. Furthermore, Frangiosa's representations were not "preposterous or palpably false."[8] Here, a fact-finder could determine that Pearl reasonably relied on Frangiosa's statements and that

---

[7] Defendants' reliance on Kennedy v. Josephthal & Co., 814 F.2d 798, 805 (1st Cir. 1987) is unavailing. That case involved what the court characterized as "reckless conduct" by plaintiffs in the context of a securities offering. Such is clearly not the case here. Here, unlike in Kennedy, DSI was not presented with conflicting statements from Frangiosa and his statements were not at odds with the parties' prior working relationship. Further, the parties have not undertaken any discovery on the issue Defendants have raised regarding Pearl's own conduct in connection with its communications with Frangiosa. Until such discovery is complete, it is premature to determine the fact-intensive issue of the reasonableness of Pearl's reliance.

[8] In fact, Defendants' Partial Motion to Dismiss must be denied whereas here Defendants have not provided any factual support for their contention that Frangiosa's statement concerning his ownership of ARP and InstallerNet was "preposterous or palpably false." See Roadmaster Indus., Inc. v. Columbia Mfg. Co., 893 F. Supp. 1162, 1179 (D. Mass. 1995) (Defendants' assertion that statements were "preposterous or palpably false" in summary judgment motion was rejected as "unsupported and belied by the record evidence"). Furthermore, even if Frangiosa's statement that DSI did not need to lawyer up is considered a statement of opinion, which DSI disputes; the statement must be evaluated in connection with the totality of the misrepresentations. See Bergeron v. Ridgewood Sec. Corp., 610 F. Supp. 2d 113, 135 (D. Mass. 2009) (internal citations omitted) (in rejecting Defendants' claim in a summary judgment motion that statement was merely an opinion, court stated, "[w]hat might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation").

Pearl had no reasonable manner of knowing that these statements were false especially considering the prior course of conduct between the parties. Compl. ¶ 20, 21. Again, at no time during the negotiations or after delivery did Pearl receive any instructions or communications from ARP. Compl. ¶ 26. Instead, all communication was directed though Frangiosa without any regard to corporate formalities. Id. As a result, Pearl based its reliance on Frangiosa's specific representations, Frangiosa's assurance of the accuracy of his statements and based on Pearl's prior business dealings and professional relationship from 2016 through 2017 with Frangiosa and InstallerNet. See Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 446, 333 N.E.2d 421, 429 (1975) ("if the seller's representations are such as to induce the buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller's assurances, his failure to ascertain the truth through investigation does not preclude recovery"); Zimmerman v. Kent, 31 Mass. App. Ct. 72, 81, 575 N.E.2d 70, 76 (1991) ("The recipient of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation."). Thus, as with Counts VIII and X, Defendants' Partial Motion to Dismiss with respect to Count XI should be denied.

## Conclusion

For all of the foregoing reasons, DSI requests that this Court enter an order denying the Partial Motion to Dismiss in its entirety.

DSI ASSIGNMENTS, LLC, SOLELY
AS ASSIGNEE FOR THE BENEFIT OF
CREDITORS OF PEARL AUTOMATION
INC.,

By its attorneys,


    */s/    Anthony R. Leone*
Michael P. Connolly (BBO #637642)
Anthony R. Leone (BBO #681760)
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
Phone: (617) 457-4000
Fax: (617) 382-4868
mconnolly@murthalaw.com
aleone@murthalaw.com

Dated: February 2, 2018

**Certificate of Service**

      I, Anthony R. Leone, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 2, 2017.

                         /s/ *Anthony R. Leone*
                         Anthony R. Leone

8952427v1