UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DSI ASSIGNMENTS, LLC, SOLELY AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF PEARL AUTOMATION INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ROAD PRODUCTS, INC.; INSTALLERNET, INC.; ANTHONY FRANGIOSA; Does 1-50, <br><br> Defendants. | Civil Action No. 1:17-cv-11963 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff DSI Assignments, LLC, Solely as Assignee for the Benefit of Creditors of Pearl Automation Inc. ("DSI") submits this memorandum in support of its Motion to Dismiss Counterclaims filed by American Road Products, Inc. ("ARP").[1] Throughout the Counterclaim, ARP complains exclusively of conduct by Pearl Automation Inc. ("Pearl") without alleging, let alone establishing, any relationship between DSI and ARP or conduct by DSI which would give rise to any liability on DSI's behalf.  As a result, ARP fails to state any claims against DSI and therefore the Counterclaims must be dismissed in their entirety.

---

[1] Defendants Installernet, Inc. and Anthony Frangiosa are not named as plaintiffs-in-counterclaim with respect to ARP's counterclaims.  To the extent they attempt to recover on the counterclaims in their own names at any later point, they would be barred from recovery for the same reasons that prevent any recovery by ARP.

9340551v1

## FACTUAL BACKGROUND[2]

### The Purchase Order Between Pearl and ARP

Pearl is a Delaware corporation with its principal place of business in California. Counterclaim ¶ 7. Prior to June 2017, Pearl developed, marketed and manufactured "RearVision," a solar-powered aftermarket automotive backup camera and alert system. Id. ¶ 8. ARP is a manufacturer and distributor of after-market automobile parts. Id. ¶ 6. In the spring of 2017, Pearl and ARP entered into negotiations for ARP to purchase Pearl's remaining RearVision inventory (the "Inventory") and for ARP to take over support and maintenance responsibilities regarding RearVision. Id. ¶ 10.

On June 23, 2017, Pearl and ARP signed a purchase order for the remaining Inventory (the "Purchase Order"). Id. ¶ 15; Exh. A to Counterclaim. A copy of the Purchase Order is also attached hereto as Exhibit A. According to the terms of the Purchase Order, ARP agreed to buy the Inventory, which included both new and returned goods, for a total price of $323,420.00. Counterclaim ¶ 15. Pearl further agreed to provide ARP with all of the RearVision source code and to grant ARP a royalty free, worldwide license for the use of all intellectual property necessary to sell, support and maintain the Inventory. Id. ¶ 12, 15. On June 20, 2017, ARP wired $70,974.87[3] to Ingram Micro Mobility, a creditor of Pearl's in possession of the Inventory, in order to obtain the release of the Inventory. Id. ¶ 17. The Inventory was delivered to ARP in several shipments in July 2017. Id. ¶ 19. On or about May 29, 2018, ARP received a message

---

[2] For purposes of this Motion only, the facts as pled in ARP's Counterclaim are taken as true. DSI reserves the right to dispute the facts as pled in the Counterclaims in the event that the Court does not grant DSI's Motion to Dismiss the Counterclaims in its entirety.

[3] Notably, beyond the payment to Ingram necessary to secure delivery of the Inventory, ARP does not allege that it paid any other portion of the agreed-to purchase price to Pearl. This failure to pay the remaining balance due is the basis of the claim by DSI, as Pearl's assignee, for recovery of the Inventory purchase price, as set forth in DSI's complaint in this action.

from Amazon.com, that Nite Ize, Inc. lodged a complaint alleging that the RearVision magnetic mount infringes on two patents it holds.  Id. ¶ 23.

### Pearl's Assignment of its Assets to DSI

On June 23, 2017, Pearl executed a General Assignment for the benefit of creditors, as authorized by its Board of Directors.  Id. ¶ 3.  DSI accepted the General Assignment on July 7, 2017, at which time the General Assignment became effective and whereby Pearl assigned all of its right, title, and interest in its personal property and assets to DSI (the "Assignment").  Id. ¶ 3; see DSI's Amended Complaint, ¶ 2 and Exhibit A to the Complaint.  A copy of the Assignment is also attached hereto as Exhibit B.[4]  Pursuant to the terms of the Assignment, DSI is responsible for marshaling and liquidating assets for distribution to Pearl's creditors.  See Assignment ¶ 3.  In particular, according to the Assignment, "Assignee shall have all powers necessary to marshal and liquidate the estate including . . . [t]o collect any and all accounts receivable and obligations owing to [Pearl]."  Assignment ¶ 5.  Moreover, according to the Assignment, "neither the Assignee nor any of its employees . . . will assume any personal liability or responsibility for any of its acts as Assignee herein . . . its obligation shall be limited to the performance of the terms and conditions of the general assignment . . . ."  Id. ¶ 7.  According to the plain language of the Assignment, DSI is charged only with liquidating Pearl's assets and is not obligated to perform any of Pearl's pre-Assignment obligations.  ARP therefore cannot obtain any relief against DSI based on Pearl's alleged breaches or other misconduct.

---

[4] Although not attached as an exhibit to the Counterclaims, the Assignment is already before the Court as part of the pleadings on file in this action.  See DSI's Amended Complaint [Docket No. 33, Exhibit A].  ARP also has incorporated the terms of the Assignment through its own allegations in the Counterclaims.  See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("when . . . a complainant's factual allegations are expressly linked—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss . . . .").

9340551v1                                    3

## ARGUMENT

In each of the four counts of ARP's Counterclaim, ARP alleges that DSI, as assignee, is liable for Pearl's breaches as follows:

- With respect to Count I, Breach of Contract: "DSI, as the assignee for the benefit of Pearl Auto's creditors, is liable for Pearl Auto's breach from the assets it has been assigned." Counterclaim ¶ 30.
- With respect to Count II, Breach of Warranty: "DSI, as the assignee for the benefit of Pearl Auto's creditors, is liable for Pearl Auto's breach of warranty." Counterclaim ¶ 35.
- With respect to Count III, Mass. Gen. Laws c. 93A: "DSI, as the assignee for the benefit of Pearl Auto's creditors, is liable for Pearl Auto's unfair and deceptive conduct." Counterclaim ¶ 42.
- With respect to Count IV, Indemnification: "Should Nite Ize bring suit against ARP for infringing on its patents, DSI, as Pearl Auto's assignee, must indemnify ARP." Counterclaim ¶ 46.

The Court should dismiss these Counterclaims in their entirety because ARP has failed to plausibly allege any facts that would support a ruling that DSI, as Pearl's assignee, is liable for the alleged acts and/or omissions of Pearl with respect to the Purchase Order and associated Inventory.

It is well-settled under California law[5] that an assignee is not liable for the underlying contractual obligations of the assignor to a third party. See Sherwood Partners, Inc. v. EOP-Marina Bus. Ctr., L.L.C., 153 Cal. App. 4th 977, 983, 62 Cal. Rptr. 3d 896, 900 (2007). In Sherwood, the court considered a third party's attempt to recover attorneys' fees and costs from an assignee pursuant to a lease agreement between the third party and assignor. The Sherwood court rejected the third-party's claims stating:

> [a]s an assignee for the benefit of creditors, [assignee] did not assume the underlying liabilities of tenant. Thus, [assignee] cannot be personally liable for

---

[5] California law applies to the Assignment since it was entered into between two California companies and its terms are subject to the California statutes governing such assignments. See California Code of Civil Procedure, § 1802. The result would be the same even if Massachusetts law were to apply. See Chatham Pharm., Inc. v. Angier Chem. Co., 347 Mass. 208, 209, 196 N.E.2d 852, 853 (1964) ("[I]t is the law of this Commonwealth that an assignment of what is due, or is to became due, under a contract is not an assignment of both the duty of performing the contract and receiving payment therefor.") (internal citations omitted).

9340551v1  4

> the award of attorney fees pursuant to the written lease between [assignor] and [third-party]. The procedure of an assignment for the benefit of creditors would be eviscerated if an [assignee] were required to assume the underlying liabilities of the assignor's insolvent business.

Id. at 979 (internal citations omitted); see also, Credit Managers' Assn. v. Brubaker, 233 Cal. App. 3d 1587, 1594-1595, 285 Cal. Rptr. 417 (2d Dist. 1991)("The beneficial procedure of an assignment for benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business.").[6]

Here, as was the case in Sherwood, DSI's obligations are narrowly and specifically defined as an assignee for the benefit of Pearl's creditors.  See Counterclaim ¶ 3; Exh. B.  The Assignment is clear: DSI's role is to "expeditiously liquidate" Pearl's property for the benefit of Pearl's creditors.  See Assignment, p. 1.  Nowhere in the Assignment did DSI assume the obligations of Pearl with respect to any of its assets, including the Inventory subject to the Purchase Order.  Thus, DSI, as assignee of Pearl's rights only, is not responsible in its own name for any claims ARP (or anyone else) may have against Pearl.[7]

ARP's own allegations confirm the limited nature of DSI's role in the underlying transaction and in these proceedings. As ARP alleges, only Pearl and ARP, through Defendant Frangiosa, negotiated the terms of the Purchase Order.  Counterclaim ¶ 11.  Further, only Pearl and ARP signed the Purchase Order. Id. ¶ 15 & Exhibit A.  Finally, only Pearl agreed to deliver the Inventory or any related source code.  Id. ¶ 12 & 15.

In contrast, ARP does not allege – because it cannot – that DSI manufactured the Inventory, had any involvement in the negotiations concerning the Purchase Order, signed the

---

[6] Copies of the Sherwood Partners, Inc. and Credit Managers' Assn. cases are attached hereto as Exhibits C & D, respectively.

[7] Pursuant to the terms of the Assignment, DSI is responsible only for marshaling and liquidating Pearl's assets and distributing the proceeds to Pearl's creditors, as those creditors were identified by Pearl as of the date of the Assignment.  See Assignment, p. 1 & ¶ 8.

Purchase Order, sold or delivered the Inventory, or made any representations or warranties regarding the Inventory. Instead, as ARP acknowledges, DSI's only involvement with the Purchase Order or the Inventory occurred post-Assignment, and solely in connection with DSI's efforts, as Assignee, to recover the outstanding receivable owed to Pearl from Defendants in connection with Pearl's delivery of the Inventory to the Defendants. See Counterclaim ¶ 3 & 19. Thus, this Court should reject any attempt by ARP to impute liability to DSI for any alleged breach of the Purchase Order, or any alleged implied warrantees, by Pearl.

As with DSI's lack of involvement concerning the sale of the Inventory, DSI also is not liable for any indemnification of ARP in connection with any patent infringement claims concerning the Inventory. The Purchase Order contains no indemnification obligations at all and, even if it did, such indemnification claim would be a claim against Pearl and not DSI. The Purchase Order certainly does not specify that DSI has any obligation to indemnify ARP for any future claims. Further, DSI did not assume any indemnification obligations under the Assignment. See Exh. B. Thus, regardless of any claim a third-party may assert against ARP or any of the other Defendants with respect to the intellectual property, DSI itself is not liable to provide any indemnification of any claims.

## CONCLUSION

ARP's attempt to impute liability upon DSI for alleged acts or omissions of Pearl is baseless and should be rejected by this Court. Here, DSI was not a party to the Purchase Order and did not sell the Inventory to ARP. Further, the Purchase Order fails to create any ongoing or independent obligation on the part of DSI with respect to ARP regarding the Inventory or the intellectual property associated with the Inventory. Instead, as set forth in the Assignment, DSI's role and responsibility is limited to marshaling and liquidating assets for the benefit of Pearl's

creditors. There is no basis under the Purchase Order, the Assignment or applicable law to permit ARP to try to convert DSI from its role as Assignee to that of a guarantor or indemnitor of Pearl's performance. As a result, ARP has failed to state any claims against DSI upon which relief may be granted. DSI thus requests that this Court allow DSI's Motion and dismiss the Counterclaims in their entirety.

> Respectfully submitted,
>
> DSI ASSIGNMENTS, LLC, SOLELY
> AS ASSIGNEE FOR THE BENEFIT
> OF CREDITORS OF PEARL
> AUTOMATION INC.
>
> By its attorneys,
>
> /s/ Michael P. Connolly
> Michael P. Connolly (BBO #637642)
> Anthony R. Leone (BBO #681760)
> MURTHA CULLINA LLP
> 99 High Street, 20th Floor
> Boston, MA 02110
> Tel: (617) 457-4000
> Fax: (617) 382-4868
> mconnolly@murthalaw.com
> aleone@murthalaw.com

Dated: July 6, 2018

**CERTIFICATE OF SERVICE**

    I, Michael P. Connolly, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 6, 2018.

                                            /s/ Michael P. Connolly
                                            Michael P. Connolly