Exhibit D

233 Cal.App.3d 1587, 285 Cal.Rptr. 417

CREDIT MANAGERS' ASSOCIATION OF SOUTHERN CALIFORNIA, Plaintiff, Cross-defendant and Appellant,
v.
JAMES W. BRUBAKER, Defendant, Cross-complainant and Appellant.

No. B043162.
Court of Appeal, Second District, Division 5, California.
Sept. 12, 1991.

## SUMMARY

An assignee for the benefit of creditors of an insolvent company that had been engaged in the business of operating automatic teller machines (ATM's), to recover amounts which its former chief executive officer had received from the insolvent company in preference over other unsecured creditors, arising out of the officer's advance of sums to the company to supply its ATM's, the trial court found defendant was obligated to return preferential transfers. The trial court awarded defendant $5,000 quantum meruit on his cross- complaint. (Superior Court of Los Angeles County, No. C611375, Delbert E. Wong, Temporary Judge.*)

The Court of Appeal modified the judgment to provide plaintiff was entitled to prejudgment interest, remanded for calculationof interest, and otherwise affirmed. The court held that the trial court properly found that sums advanced by defendant to obtain currency for use in the company's automatic teller machines constituted a loan, and not a bailment, special deposit, or trust. Defendant did not actually supply currency for use in the machines, but wrote a check to the company, which paid defendant back with interest, even though it was in the same amount as defendant paid. The fact the loan was designated only for the specific purpose of supplying the machines did not necessarily change its character as a loan as defined in Civ. Code, § 1912. Civ. Code, § 1925, expressly excludes money from the concept of a bailment, while Civ. Code, § 1884, defines a "loan for use" to involve temporary possession of personal property and the return of the "same thing." The court also held that the transfers by the company to defendant were not for payments made and debts incurred in the ordinary course of business (Code Civ. Proc., § 1800, subd. (c)(2)).

## HEADNOTES

Classified to California Digest of Official Reports

(¹)
Loans § 2--Definitions and Distinctions--Sums Advanced for Use in Automatic Teller Machines.
In an action by an assignee for the benefit of creditors against a former chief executive officer of the insolvent company, the trial court properly found that sums advanced by defendant to obtain currency for use in the company's automatic teller machines constituted a loan, and not a bailment, special deposit, or trust. Defendant did not actually supply currency for use in the machines, but wrote a check to the company, which paid defendant back with interest, even though it was in the same amount as defendant paid. The fact the loan was designated only for the specific purpose of supplying the machines did not necessarily change its character as a loan as defined in Civ. Code, § 1912. Civ. Code, § 1925, expressly excludes money from the concept of a bailment, while Civ. Code, § 1884, defines a "loan for use" to involve temporary possession of personal property and the return of the "same thing." Determining whether the transaction was a loan, the trial court properly looked to the substance of the transaction rather than the form or terminology of the parties. Moreover, since the proceeds of the loan would in fact be used in the operation of the business, the proceeds were not merely a special deposit or trust.

[See **Cal.Jur.3d (Rev)**, Creditors' Rights and Remedies, § 36.]

(²)
Assignments for Benefit of Creditors § 3--Rights of Creditors-- Assignment in Ordinary Course of Business.
In an action by the assignee for the benefit of creditors against the former chief executive of the insolvent company, which operated automatic teller machines (ATM's), to recover amounts which defendant had received from the company in preference over other unsecured creditors, the trial court properly determined that the transfers by the company to defendant were not for payments made and debts incurred in the ordinary course of business (Code Civ. Proc., § 1800, subd. (c)(2)). The sums had initially been advanced to the company by defendant from his personal credit to obtain money to

supply the ATM's. Because defendant was not a financial institution in the business of making loans, the trial court reasonably found the loans by him to the company were not in the ordinary course of business for him. Moreover, the payments were not made within 45 days after the debt was incurred, as properly measured by the time when defendant's line of credit was charged, rather than later as customers withdrew cash from the ATM's.

(³)
Assignments for Benefit of Creditors § 2--Assignees--Liability for Employment Contract.
In an action by the assignee for the benefit of creditors against the former executive of the insolvent company, the trial court properly found that defendant was not entitled to damages for breach of his employment contract with the company. The assignment did not include any assumption by the assignee of the liabilities of the company's contractual agreements. The assignment was not an assignment in connection with the purchase and sale of the company as a going concern, but an assignment for the benefit of creditors, pursuant to which the assignee, as a disinterested third party, would liquidate and distribute the assets of the company to creditors. The beneficial procedure of an assignment for benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business (Code Civ. Proc., § 493.010).

[See 1 **Witkin**, Summary of Cal. Law (9th ed. 1987) Contracts, § 924.]

(⁴)
Interest § 4--Interest on Judgments--Prejudgment Interest.
An assignee for the benefit of creditors who recovered a judgment against the former chief executive of the company for money defendant received from the company in preference over other unsecured creditors, arising out of defendant's advance to the company of money to supply its automatic teller machines, plaintiff was entitled to prejudgment interest because the damages were certain or capable of being made certain by calculation. (Civ. Code, § 3287, subd. (a)). Plaintiff had sent defendant a demand letter for the exact amount requested in plaintiff's complaint and awarded in the judgment, and listed the payments from the company to defendant claimed to be recoverable by plaintiff as preferences. Although the demand letter acknowledged plaintiff's awareness of defendant's claim that the funds remained his property at all times, plaintiff merely suggested a different figure which would be due even if defendant were to prevail on that argument. Defendant's denial of liability on the main theory did not make the damages uncertain within the meaning of Civ. Code, § 3287.

COUNSEL
Sheppard, Mullin, Richter & Hampton, Brian L. Holman and David Isenberg for Plaintiff, Cross-defendant and Appellant.
Hennigan & Mercer, J. Michael Hennigan and Pamala J. King for Defendant, Cross-complainant and Appellant.
*1590

ASHBY, J.

Pursuant to a general assignment for the benefit of creditors, plaintiff Credit Managers' Association of Southern California, now known as Credit Managers' Association of California (CMA), was assigned the assets of an insolvent partnership, National Transaction Systems (NTS). In marshalling the assets of the partnership in order to distribute them equally to the unsecured creditors, CMA brought this action against defendant James W. Brubaker pursuant to Code of Civil Procedure section 1800. The purpose of the action was to recover amounts which Brubaker, the chief executive officer of NTS, had received from NTS in preference over other unsecured creditors. Brubaker filed a cross-complaint for breach of his NTS employment contract and to recover compensation for services rendered after the assignment for benefit of creditors.

By nonjury trial the court found that Brubaker was obligated to return preferential transfers in the amount of $118,582.49. On Brubaker's cross-complaint the court awarded $5,000 to Brubaker in quantum meruit.

Both parties appeal. Brubaker contends that he was not a "creditor" of NTS and the advances he made to NTS should be regarded as a bailment, trust, or advances in the ordinary course of business. He also contends he was entitled to breach of contract damages on his cross-complaint. CMA appeals, contending the court should have awarded prejudgment interest on the judgment in CMA's favor.

We affirm the judgment in favor of CMA for $118,582.49 and the judgment for Brubaker for $5,000. We remand for the trial court to add prejudgment interest to the award in favor of CMA.

**Background**

At all pertinent times NTS was insolvent. Brubaker, the chief executive officer under a written executive employment agreement with NTS, knew or had reason to know of the insolvent financial condition of NTS. Between September 1984 and December 23, 1985 (the date of the general assignment for the benefit of creditors), Brubaker advanced substantial funds to NTS through Brubaker's $150,000 personal line of credit with the Bank of America. Periodically NTS repaid these advances. Brubaker was repaid 100 percent of his advances, whereas other unsecured creditors received less than 10 percent. Under these circumstances Code of Civil Procedure section 1800, subdivision (b) permits CMA to recover transfers from NTS to Brubaker within the one-year period prior to the assignment for the benefit of creditors. *1591

Brubaker's primary contention on appeal is that he was not a creditor. He contends that the funds he advanced to NTS should be characterized as a bailment or a trust rather than a loan, and therefore the transfers from NTS back to him were merely the return of "his" money, not a preference over other creditors. Understanding this contention requires a brief description of NTS's business.

NTS operated a system of automated teller machines (ATM's). The ATM's in this case were placed in 7-Eleven stores. NTS would stock the ATM's with $20 bills. A customer using an ATM card from the customer's own bank could withdraw cash from the ATM. A magnetic record of the transaction was sent to an automatic clearing house. At the automatic clearing house the account at the customer's bank was debited with the withdrawal, and NTS's account was credited with that amount plus a transaction fee.

Brubaker advanced funds to NTS so that NTS could obtain the currency to stock the ATM's with $20 bills. Brubaker had a personal line of credit at Bank of America. Brubaker would write a check drawn on his personal line of credit. Brubaker's check would be deposited into NTS's general operating account. NTS would then write a check to Bank of America, which was cashed for currency. The currency was loaded into cassettes and taken by armored truck to the ATM's in the 7-Eleven stores.

After the automatic clearing house reconciled the daily transactions from the ATM's, the funds in NTS's clearing house account were used either (1) to repay to Brubaker's line of credit the amounts advanced by Brubaker, plus the interest owed by Brubaker to the Bank of America, or (2) to obtain more currency to replenish ATM's. The advances attributable to Brubaker were used solely to obtain currency for the ATM's and were not comingled with NTS's funds for other operating expenses.

During the one-year period prior to the assignment for benefit of creditors, NTS transferred $118,582.49 to Brubaker's benefit on account of antecedent debts to Brubaker (after deducting certain "new value" allowed as a defense under Code of Civil Procedure section 1800, subdivision (c)(4)).

### Characterization of Loans

([1]) Brubaker contends he was not a "creditor" of NTS and the sums he advanced to NTS should be characterized as a bailment, special deposit, or trust. There is no merit to this contention. Substantial evidence supports the trial court's contrary conclusion. *1592

Civil Code section 1925 expressly excludes money from the concept of bailment.[1] Similarly, Civil Code section 1884 defines a "loan for use" to involve temporary possession of personal property and the return of the "same thing" without reward.[2] Brubaker's transaction was properly found to be a loan, as defined in Civil Code section 1912: "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed."

Brubaker cites a written "currency supply agreement" he executed with NTS dated August 1, 1985.[3] Contrary to Brubaker's argument, this agreement is not controlling. In determining whether the transaction was a loan, the court will look to the substance of the transaction rather than the form or terminology of the parties. (*Burr v. Capital Reserve Corp.* (1969) 71 Cal.2d 983, 989 [80 Cal.Rptr. 345, 458 P.2d 185]; *Great American Ins. Co. v. National Health Services, Inc.* (1976) 62 Cal.App.3d 785, 791 [133 Cal.Rptr. 420].)[4]

Brubaker never actually supplied currency, i.e., $20 bills, for use in the ATM's. He wrote a check to NTS which deposited the check in its operating account and which wrote another check to cover the cost of obtaining *1593 currency from the bank. In essence, Brubaker financed the purchase of NTS's inventory for its vending machines.

The currency obtained as a result of Brubaker's advances could not literally remain his throughout the transaction, because the $20 bills became the property of the customer when withdrawn from the ATM.

NTS paid Brubaker back with interest, which is characteristic of a loan of money. (Civ. Code, § 1914.) This characteristic as interest is not changed by the fact the interest was equivalent to the interest charged by Bank of America to Brubaker.

Brubaker cites a federal case involving gasoline in a pipeline for the proposition that a bailment can exist in a "fungible commodity." (*In re Fuel Oil Supply and Terminaling, Inc.* (S.D. Tex. 1987) 72 B.R. 752, revd. on other grounds (5th Cir. 1988) 837 F.2d 224.) California law clearly distinguishes money, however. (Civ. Code, §§ 1912-1915, 1925.)

The fact the loan was designated for only the specific purpose of supplying the ATM's does not necessarily change its character as a loan. (*Calvin & Co. v. United States of America* (1968) 264 Cal.App.2d 571, 574-575 [70 Cal.Rptr. 578].)

It was intended and contemplated that the proceeds of Brubaker's loans would be *used* in the operation of NTS's business; it was further contemplated and intended that these business operations would generate sufficient revenue to pay the necessary interest. Since the proceeds would in fact be used in operation of the business, the proceeds were not merely a special deposit or trust. (See *Bank of America Assn. v. California Bk.* (1933) 218 Cal. 261, 273-274 [22 P.2d 704]; *Petherbridge v. Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517-518 [145 Cal.Rptr. 87].)

### Ordinary Course of Business

([2]) Brubaker contends that even if Brubaker is a creditor of NTS, the transfers by NTS to Brubaker were within the exception in Code of Civil Procedure section 1800, subdivision (c)(2) for payment made and debt incurred in the ordinary course of business.[5] There is no merit to this *1594 contention. The trial court's finding against Brubaker is supported on two grounds.

First, under Code of Civil Procedure, section 1800, subdivision (c)(2)(A), the debt must be incurred in the ordinary course of business of the assignor *and* the transferee. Brubaker was not a financial institution in the business of making loans, thus the trial court reasonably found the loans were not in the ordinary course of business for him. (Cf. *In re Fulghum Const. Corp.* (6th Cir. 1989) 872 F.2d 739, 743.)

Second, under Code of Civil Procedure, section 1800, subdivision (c)(2)(B), the payment must be made no later than 45 days after the debt was incurred. Brubaker contends this condition was satisfied if the debt is viewed as incurred when a customer withdrew cash from an ATM. This contention lacks merit in light of our holding that Brubaker's advances to NTS were properly characterized as loans. The debt was therefore incurred when Brubaker's line of credit was charged, rather than later as customers withdrew cash from the ATM's. (See *Matter of CHG Intern., Inc.* (9th Cir. 1990) 897 F.2d 1479, 1486.) Indeed, the currency supply agreement on which Brubaker relies obligates NTS to pay interest from the time of withdrawal from Brubaker's Bank of America account. (Fn. 3, *ante.*)

### Cross-complaint for Executive Compensation

Brubaker was chief executive officer of NTS pursuant to a written employment agreement. Brubaker filed a cross-complaint against CMA, contending that CMA is liable for breach of contract for the compensation Brubaker would have earned on the remaining two years of his contract. CMA denied liability on the contract but conceded that Brubaker was due $5,000 in quantum meruit for two weeks of services assisting CMA in winding down the affairs of the insolvent NTS. The trial court awarded Brubaker $5,000 on his cross-complaint.

([3]) Brubaker contends he was entitled instead to damages for breach of his employment contract with NTS. The trial court properly rejected this contention. The assignment to CMA did not include an assumption by CMA of the liabilities of NTS's contractual agreements.

The assignment to CMA was not an assignment in connection with the purchase and sale of NTS as a going concern. It was an assignment for the benefit of creditors, pursuant to which CMA, as a disinterested third party, would liquidate and distribute the assets of NTS to creditors. The beneficial procedure of an assignment for benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business. *1595 (Code Civ. Proc., § 493.010; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 924, p. 824.)

### Prejudgment Interest

([4]) CMA appeals from the judgment in its favor for

$118,582.49, to the extent the trial court denied prejudgment interest on this amount. CMA contends it is entitled as a matter of right to prejudgment interest because the damages were certain or capable of being made certain by calculation. (Civ. Code, § 3287, subd. (a).) We agree.

On June 18, 1986, CMA sent Brubaker a demand letter, which Brubaker admitted receiving. The letter demanded $118,582.49, the exact amount requested in CMA's complaint and awarded in the judgment. The demand letter listed the payments from NTS to Brubaker claimed to be recoverable by CMA as preferences, as well as conceded credits for new advances.

The exact amount due and the manner of calculation were made known by CMA to Brubaker, and CMA was therefore entitled to interest from that date. (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798 [142 Cal.Rptr. 1]; *Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 690 [48 Cal.Rptr. 901].)

There is no merit to Brubaker's suggestion that CMA's demands were inconsistent or uncertain. The demand letter acknowledged CMA's awareness of Brubaker's claim that the funds remained his property at all times.

CMA merely suggested a different figure which would be due even if Brubaker were to prevail on that argument. Brubaker's denial of liability on the main theory did not make the damages uncertain within the meaning of Civil Code section 3287. (*Continental Bank v. Blethen* (1970) 7 Cal.App.3d 178, 187 [86 Cal.Rptr. 485].)[6]

### Disposition

The judgment is modified to provide that plaintiff Credit Managers' Association of Southern California, now known as Credit Managers' Association of California, is entitled to interest on the judgment from June 18, 1986, pursuant to Civil Code section 3287, subdivision (a). As so modified the judgment is affirmed and the cause remanded to the trial court for calculation of interest. Costs on appeal are awarded to Credit Managers' *1596 Association of Southern California, now known as Credit Managers' Association of California.

Turner, P. J., and Boren, J., concurred. *1597

Footnotes

*     Pursuant to California Constitution, article VI, section 21. (Opinion by Ashby, J., with Turner, P. J., and Boren, J., concurring.) *1588

1     Civil Code section 1925 states: "Hiring is a contract by which one gives to another the temporary possession and use of property, *other than money,* for reward, and the latter agrees to return the same to the former at a future time." (Italics added.)

2     Civil Code section 1884 states: "A loan for use is a contract by which one gives to another the temporary possession and use of personal property, and the latter agrees to return *the same thing* to him at a future time, without reward for its use." (Italics added.)

3     This agreement recited in part, "Brubaker will make available, from time to time, as requested by NTS and agreed by Brubaker, currency for the 7-Eleven stores up to an amount of Two Hundred Fifty Thousand dollars ($250,000) for the sole purpose of provisioning the Automated Teller Machines (ATMs) at 7-eleven stores in California. Currency provided by Brubaker under this agreement are secured by said currency, which shall remain the property of Brubaker. [¶] Said currency shall remain the property of Brubaker throughout the transaction, including but not limited to pickup and delivery of the currency from Bank of America, recovery of the currency dispensed through the Federal Reserve Automated Clearing House (ACH) and crediting or recrediting Brubaker account at Bank of America. At no time will the currency supplied by Brubaker be comingled with NTS funds or used for any other purpose than supplying currency to the NTS owned ATMs at 7-Eleven locations in California. [¶] NTS shall reimburse Brubaker for interest charged to Brubaker by Bank of America for the time that the currency has been withdrawn from Brubaker's account at Bank of America until such funds have been returned to said account. [¶] Brubaker may, at any time, demand return of any or all such currency to his account at Bank of America, with or without reason, and NTS shall return such currency immediately, without recourse."

4     Contrary to Brubaker's argument at trial, the court was not required to treat Brubaker's currency supply agreement the same as an assertedly analogous agreement between NTS and California First Bank. Unlike Brubaker, California First

<pre> was a bank supplying currency from its "vault cash" on deposit at the Federal Reserve, under specific federal regulations.

5   Code of Civil Procedure section 1800, subdivision (c)(2) provides: "The assignee may not recover under this section a transfer: [¶] To the extent that such transfer was: [¶] (A) In payment of a debt incurred in the ordinary course of business or financial affairs of the assignor and the transferee; [¶] (B) Made not later than 45 days after such debt was incurred; [¶] (C) Made in the ordinary course of business or financial affairs of the assignor and the transferee; and [¶] (D) Made according to ordinary business terms."

6   On its cross-appeal CMA raises additional issues regarding certain pretrial rulings, but expressly withdraws those issues in the event this court affirms the judgment in CMA's favor. In light of our disposition these issues need not be discussed.